IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REGINALD DARREL TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-01764-K-BN |
| | § | |
| ACADEMIC PARTNERSHIPS, LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Reginald Darrel Taylor filed a *pro se* action in state court against his former employer, Defendant Academic Partnerships, LLC, and others. *See* Dkt. No. 1-6. Academic Partnerships answered in state court, *see* Dkt. No. 1-8, and then removed to federal court, *see* Dkt. No. 1. This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade.

Two motions are now before the Court:

1.   Defendants' motion to dismiss Plaintiff's claims against the individual defendants under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 24], to which Plaintiff responded, *see* Dkt. No. 31, Defendants replied, *see* Dkt. No. 38, and Plaintiff again responded (without leave of Court), *see* Dkt. No. 52; and

2.   Plaintiff's motion to disqualify counsel [Dkt. No. 27], to which Defendants

responded, *see* Dkt. No. 45.

After considering the motions and the parties' briefing, the undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons explained below, the Court should grant the motion to dismiss Plaintiff's claims against the individual defendants, as well as *sua sponte* dismiss his claims against Academic Partnerships except his retaliation claim without prejudice to Plaintiff's filing an amended complaint within a reasonable time to be set by the Court. The Court should also deny Plaintiff's motion to disqualify opposing counsel.

## Applicable Procedural Background

Academic Partnerships removed Plaintiff's original state court petition on the basis of diversity jurisdiction. Subsequently, current or former employees of Academic Partnerships, named as additional defendants, were served.

Following entry of the Federal Rule of Civil Procedure 16(b) scheduling order [Dkt. No. 21], Plaintiff attempted to amend his claims on multiple occasions during August and September of 2019, *see* Dkt. Nos. 26, 32, 35, 36. None of these attempted filings complied with the Standing Order on Discovery and Other Non-Dispositive Motions [Dkt. No. 4], which required that each be struck and unfiled without prejudice to Plaintiff's ability to refile them in compliance with the Standing Order, *see* Dkt. Nos. 18, 29, 34, 37, 43. Plaintiff did not attempt to file a motion for leave to amend complying with the Standing Order.

After filing his motion to disqualify opposing counsel, *see* Dkt. No. 27, Plaintiff moved to impose sanctions against her under Federal Rule of Civil Procedure 11, *see*

Dkt. No. 41. His Rule 11 motion was denied by the Court in accordance with the recommendations of the undersigned. *See* Dkt. Nos. 44 & 49.

### Factual Background

Plaintiff, a former employee of Academic Partnerships, alleges that he filed a report with the EEOC in March 2019 based on Defendants' discriminatory treatment, refusal of reasonable medical accommodation, and failure to provide equal employment opportunities or a safe work environment. The events giving rise to Plaintiff's EEOC complaint and the present lawsuit allegedly occurred on or about October 23, 2018. *See generally* Dkt. No. 1-6.

Plaintiff alleges that Defendants collectively engaged in discrimination by knowingly making false statements about him. The statements to which Plaintiff refers include: "Plaintiff threatened Earl Frischkorn or other management personnel"; "Plaintiff created a disturbance on the floor"; and "Plaintiff was insubordinate." *Id.* at 3. Plaintiff contends not only that these statements are false but that he suffered immediate and irreparable injury because of them. *See id.* at 4.

After filing the EEOC complaint, Plaintiff alleges that he was further victimized by Academic Partnerships or its individual employees, including Earl Frischkorn, Jennifer Shelton, Mary Ann Doran, Salman Meherali, Miranda Behn, Markiya Lewis, Shemar Rice, Charmaine Martinez, and Sherry Harber. *See id.* at 3-4. According to Plaintiff, either Academic Partnerships or the individuals threatened him and attempted to bribe him into withdrawing the complaint by offering $18,000. *See id.* As a result of his refusal to withdraw the complaint, Plaintiff alleges that Defendant(s)

ultimately retaliated by terminating his employment and continuously harassing him even following termination. *See id.*

In addition to setting forth allegations against Academic Partnerships and its individual employees (or former employees), Plaintiff moves to disqualify Defendants' lead counsel – Carrie Hoffman – on a number of grounds. *See* Dkt. No. 27. Plaintiff contends that Ms. Hoffman's participation in the present litigation gives rise to a conflict of interest to which her client did not consent because her pre-litigation involvement makes her a necessary fact witness. *See id.* And he further claims that Ms. Hoffman's representation will result in the appearance of impropriety, given her alleged display of unethical behaviors and failure to represent the truth in filings. *See id.*

Further details of Plaintiff's allegations will be discussed below as necessary to address his claims.

## Legal Standards and Analysis

I.    Motion to Dismiss

    A.    **Legal Standards**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the

plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted); *cf. Crisco v. Lockheed Martin Corp.*, No. 4:10-cv-418-A, 2010 WL 3119170, at *2 n.2 (N.D. Tex. Aug. 4, 2010) ("Rule 8 requires that a statement of the court's jurisdiction be included in a 'pleading,' and plaintiff's response to defendant's motion is not a pleading." (citation

omitted)).

The undersigned therefore limits the analysis below to considering the allegations as made in Plaintiff's original complaint – the petition he filed in state court [Dkt. No. 1-6].

### B.    Analysis

1.    Title VII and the ADA Preclude the Imposition of Liability Against Individual Defendants

While Plaintiff asserts that several individuals are liable to him for a variety of violations under Title VII of the Civil Rights Act of 1964 – including discrimination, hostile work environment, and retaliation – that statute "does not impose liability on individuals unless they are 'employers.'" *Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013) (per curiam) (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)). And the United States Court of Appeals for the Fifth Circuit has "repeatedly rejected any individual liability under Title VII." *Baldwin v. Layton*, 300 F. App'x 321, 323 (5th Cir. 2008) (per curiam); *see also Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (per curiam) ("Umoren's Title VII claims against the Individual Defendants were properly dismissed because 'relief under Title VII is only available against an employer, not an individual supervisor or fellow employee.'" (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) (citing, in turn, 42 U.S.C. § 2000e(b)'s definition of "employer"))).

Plaintiff does not allege facts in the operative complaint to support the conclusion that any of the individual named defendants – Earl Frischkorn, Jennifer Shelton, Mary

Ann Doran, Salman Meherali, Miranda Behn, or others – were his employers. And, although he identifies these individuals as "employees, advisors, and affiliates" of Academic Partnerships, *see* Dkt. No. 1-6 at 3 ¶ 4.1.1, regardless of whether they may be classified as fellow employees or supervisors, Title VII precludes the imposition of liability against them due to its restriction on claims against individuals. *See, e.g., Jackson v. Fed. Express Corp.*, No. 3:03-cv-2341-D, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (dismissing Title VII claim against co-worker, noting that the statute does not permit the imposition of liability upon an individual who does not meet the statutory definition of "employer"); *Chavez v. McDonald's Corp.*, No. 3:99-cv-1718-D, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (dismissing Title VII claim brought against supervisor in his individual capacity).

Plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, against the individual defendants (for discrimination based on failure to provide a reasonable accommodation) are similarly precluded. The ADA prohibits employers from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2015). The ADA's definition of "employer" is essentially identical to the definition contained within Title VII. *See* 42 U.S.C. § 12111(5)(A) ("The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day. . .and any agent of such person"). And courts interpret the ADA consistent with Title VII's provisions. *See, e.g., Brewer v. Lavoi Corp.* No. 3:13-cv-4918-N, 2014 WL 4753186, at *3 (N.D. Tex. Sept. 24, 2014).

Given the similarities between the definition of "employer" in the ADA and Title VII, courts that have considered the issue have concluded that the imposition of liability against individuals is barred under the ADA for the same reason individual liability is precluded under Title VII. *See, e.g., id.* ("Courts interpret the ADA ... consistent with the provisions of Title VII." (collecting cases and dismissing the plaintiff's "Title VII ... and ADA claims against the eight supervisory defendants ... with prejudice")).

In sum, Plaintiff's Title VII and ADA claims against the nine individual defendants should be dismissed with prejudice.

And, although Defendants request dismissal of all claims against the aforementioned individual defendants, *sua sponte* dismissal of certain of Plaintiff's claims against Academic Partnerships is also appropriate. This additional consideration by the Court at this stage is justified because, although Academic Partnerships paid the filing fee to remove this action to federal court, the state court granted Plaintiff leave to proceed *in forma pauperis* ("IFP") when he filed his petition there. *See* Dkt. No. 1-4 at 4-6; Dkt. No. 1-5; Dkt. No. 1-6 at 9. Such a posture allows the federal court to screen a plaintiff's claims under 28 U.S.C. § 1915(e)(2)(B), even after a fee-paid removal. *See, e.g., Phillips v. City of Dallas*, No. 3:14-cv-3131-M, 2015 WL 233336, at *4 (N.D. Tex. Jan. 14, 2015) ("As this Court, among others, has recognized, Section 1915(e)(2)(B) applies to complaints, like Plaintiff's, 'that were originally filed IFP in state court and removed to federal court.'" (quoting *Tsuchiya v. Texas*, No. 4:14-cv-64-O, 2014 WL 1329127, at *1 (N.D. Tex. Mar. 5, 2014), *rec. adopted*, No. 4:14-cv-64-O, Dkt. No. 21 (N.D. Tex. Apr. 1, 2014); citation omitted)), *appeal dismissed*, 644 F. App'x 368 (5th Cir.

2016) (per curiam). As Section 1915(e)(2)(B) provides, "the court shall dismiss the case <u>at any time</u> if the court determines that ... the action ... is frivolous [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B) (emphasis added).

> 2. Plaintiff Fails to Allege a Plausible Employment Discrimination <u>Claim</u>

Plaintiff contends that in the course of his employment with Academic Partnerships, Defendants discriminated against him by failing to provide equal employment opportunities and a safe work environment. *See* Dkt. No. 1-6 at 3. Disparate treatment discrimination under Title VII involves "employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Pachecho v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). A plaintiff need not establish a prima facie case of discrimination in order to survive a motion to dismiss for failure to state a claim – or screening under Section 1915(e)(2)(B). *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). But a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted). And there are only "two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff "*because of* [his] protected status." *Cicalese*, 924 F.3d at 767 (citations omitted).

Plaintiff fails to plausibly allege a discriminatory motive on the part of any defendant. The complaint is devoid of any allegation that Plaintiff was made a target

of discrimination based on his identity or national origin. He further fails to describe any specific instances of mistreatment by his employer or any instance in which another employee was treated more favorably than him. Plaintiff merely refers to alleged "defamatory statements" in which "defendant(s)" falsely accused him of threatening management personnel, intimidating others, and creating disturbances in the workplace. Dkt. No. 1-6 at 3 ¶ 4.1.1. These accusations simply cannot be described as discriminatory because they do not show that plaintiff was being singled out because of a protected status. In fact, Plaintiff fails to proffer any facts demonstrating the existence of comparable employees who were treated differently than him in any respect. As a result, Plaintiff's complaint, taken as true and viewed in the light most favorable to him, does not plausibly allege a discriminatory motive.

### 3. Plaintiff Fails to Allege a Plausible Hostile Work Environment Claim

Plaintiff's hostile work environment allegations are similarly unsubstantiated. To state a claim for hostile work environment, Plaintiff must allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on that protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, yet failed to take prompt remedial action. *Mendoza v. Helicopter*, 548 F. App'x 127, 128 (5th Cir. 2013) (per curiam). A "hostile work environment" is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In determining whether a work environment is sufficiently hostile, the court considers the totality of the circumstances. *See Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

The environment of which Plaintiff complains does not give rise to a Title VII violation based on hostile work environment. Plaintiff vaguely alleges that his employer failed to provide a "safe work environment" and that "Defendant(s) made false, misleading, and defamatory statements" about him. Dkt. No. 1-6 at 3 ¶ 4.1.1. But Plaintiff fails to allege that his employer's offensive treatment was unfair in the sense that it was motivated by discrimination based on a protected status. Plaintiff does not state that he belongs to any protected group as required by Title VII and therefore cannot establish the first element of his hostile work environment claim. Plaintiff has not, moreover, alleged that whatever harassment he claims to have been subjected to was "unwelcome." Plaintiff only complains about the "misleading" nature of his employer's statements, without alleging that he did not in fact engage in the workplace misconduct he was being accused of. *Id.* Whether or not his employer's statements were true, the environment Plaintiff vaguely describes is not one that can appropriately be labeled as abusive or unsafe.

4.    Solely for Purposes of Screening, Plaintiff Alleges a Plausible <u>Retaliation Claim against Academic Partnerships</u>

For purposes of screening under Section 1915(e)(2)(B) – and without prejudging the merits of, for example a motion for judgment on the pleadings as to this ground – Plaintiff has alleged (against Academic Partnerships only) a plausible Title VII violation on grounds of retaliation resulting from his filing a complaint with the EEOC. In order to state a valid claim for retaliation, Plaintiff must allege (1) that he "engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (per curiam) (citation omitted).

> For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Specifically, a plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).
>
> Title VII's anti-retaliation provisions do not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* However, retaliatory adverse employment actions also need not rise to the level of ultimate employment decisions. *Id.*; *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009). [And], when determining whether an allegedly retaliatory action is materially adverse, courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among ... coworkers.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

-13-

*Welsh v. Fort Bend Indep. Sch. Dist.*, ___ F.3d ____, No. 19-20239, 2019 WL 5588992, at *6 (5th Cir. Oct. 30, 2019) (citation modified).

While, in general, the filing of a complaint with the EEOC constitutes a protected activity under Title VII, "[a] vague complaint that does not reference a discriminatory employment practice does not constitute a protected activity." *Carter*, 541 F. App'x at 418 (citing *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) ("We agree with the district court. Davis's statement during the April 15 meeting that Santowski created a 'hostile work environment' does not itself constitute 'protected activity' within the meaning of Title VII, as this complaint lacked a racial or gender basis. 42 U.S.C. § 2000e-3(a). We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." (collecting cases))).

So a plausible retaliation claim may not be based on an EEOC complaint in which "an employee [ ] simply complain[s] that she received unfair or undesirable treatment." *Carter*, 541 F. App'x at 418.

Here, it may be possible that is all that Plaintiff complained of in his EEOC complaint. But that complaint was not made part of the petition that Plaintiff filed in state court and is otherwise not properly before the Court now, and to speculate on its contents would be inappropriate and counter to viewing Plaintiff's claims in the light most favorable to him, considering he alleges that he was terminated on June 10, 2019 after raising to the EEOC in March 2019 "an incident entailing a common law breach of duty" by Academic Partnerships "due to discrimination and refusal of reasonable

-14-

medical accommodation on or about October 23, 2018." Dkt. No. 1-6 at 3 ¶ 4.1.1.

5.    Plaintiff Fails to State a Plausible Claim of Disability <u>Discrimination Under the ADA</u>

Plaintiff's allegations are insufficient to state a plausible claim for relief under the ADA against any defendant. To state a claim that an employer failed to provide a reasonable accommodation, an employee must allege that: (1) he is a "qualified individual with a disability"; (2) "the disability and its consequential limitations were 'known' by the covered employer"; and (3) "the employer failed to make 'reasonable accommodations' for such known limitations." *Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(1). Here, Plaintiff has not asserted that he is limited by any sort of disability, nor that his employer treated him as a disabled person so as to trigger liability under the ADA. Absent plausible allegations that he may correctly be classified as a "qualified individual" under the statute, Plaintiff cannot establish a plausible claim for failure to accommodate against any of the defendants, whether precluded from the imposition of individual liability or not.

6.    <u>Plaintiff Fails to State a Plausible Defamation Claim</u>

Plaintiff's assertion that he is entitled to relief under theories of defamation, slander, and libel is likewise insufficient to maintain any cause of action. To maintain

a valid defamation claim under Texas law, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) containing assertions of fact that are defamatory, injuring the plaintiff's reputation; (3) while acting with either actual malice, if plaintiff is considered a public official or public figure, or negligence, if plaintiff is a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see generally N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). A plaintiff may avoid dismissal of a defamation claim by presenting clear and specific evidence as to each element. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "Clear and specific evidence means that the plaintiff 'must provide enough detail to show the factual basis for its claim.'" *Id*. (quoting *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015)).

Defamation may occur through either libel or slander. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). An action for libel requires the publication of a defamatory statement about the plaintiff to a third party in written or other graphic form. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. Slander, on the other hand, is defamation in oral form that is likewise published to a third party. *Tatum*, 554 S.W.3d at 623-24.

The threshold question in a case alleging defamation is "whether the words used 'are reasonably capable of a defamatory meaning.'" *Id*. at 624 (citing *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)). A statement is (1) defamatory when it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's

honesty, integrity, virtue, or reputation," TEX. CIV. PRAC. & REM. CODE ANN. § 73.001, and (2) "defamatory per se when it is 'so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed,'" *Tatum*, 554 S.W.3d at 638 (citations omitted). And, unless a statement is verifiably false, it is not defamatory regardless of whether it is in oral or written form. *See id.* at 624.

Viewing the allegations in the operative complaint as true, Plaintiff has failed to state a plausible claim of defamation, as the complaint does not allege with plausible specificity any of the required elements.

Plaintiff does not specify which of the defendants made the "defamatory statements" of which he complains, nor does he allege that the statements were published – as the first element of any defamation claim requires. Defamatory statements are considered "published" when communicated verbally or in writing to some third person capable of understanding their defamatory nature. *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App. – Dallas 2003, no pet.).

And Plaintiff complains that "Defendant(s) statements about Plaintiff are totally false" and that the statements paint him in a false light with former colleagues, friends, and prospective employers. Dkt. No. 1-6 at 4 ¶ 5.1.1. But this mere conclusion fails to plausible allege that the statements were in fact false. *See, e.g., Callins v. Swift Transport. Co. of Ariz., LLC*, No. 3:17-cv-1975-C-BN, 2018 WL 4290790, at *6 (N.D. Tex. Feb. 28, 2018) ("Quite simply, Callins's defamation claim would not 'survive a motion to dismiss' under *Twombly* and *Iqbal* because she has failed to 'plead facts sufficient to show' that the defamation claim has 'substantive plausibility' by stating 'simply,

concisely, and directly events' that support such a claim – fundamentally, what was said." (quoting *Johnson*, 574 U.S. at 12)), *rec. accepted*, 2018 WL 4283555 (N.D. Tex. Sept. 7, 2018).

### 7.    Plaintiff Fails to State a Plausible Negligence Claim

Plaintiff similarly fails to allege facts sufficient to bring a plausible negligence claim. Under Texas law, the elements of a negligence claim are: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008); *Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Once again, Plaintiff does not set forth any facts or evidence that would support the elements of his claim. In the operative complaint, Plaintiff repeatedly asserts that the individual defendants and Academic Partnerships owed him a "special duty" of care that was apparently violated by their alleged disregard for Plaintiff's civil rights. *See* Dkt. No. 1 at 3 ¶ 4.1.1; *id.* at 5 ¶ 9.1. Plaintiff further alleges that he suffered "immediate, irreparable harm and loss" due in part to Defendants' negligent acts. *Id.* at 4 ¶ 5.1.1. But these conclusory allegations are insufficient to state a plausible negligence claim, considering they fail to describe the occurrence of a single act by any of the defendants that could be construed as negligent. Without alleging the existence of a negligent act, Plaintiff cannot show that whatever loss he experienced was proximately caused by negligence.

8.    Plaintiff is Barred from Asserting Criminal Allegations in a Civil <u>Action</u>

Plaintiff alleges that, in addition to the imposition of liability for several civil causes of action, the defendant should also be held responsible for criminal offenses, including harassment and bribery, under the Texas Penal Code. *See* Dkt. No. 1-6 at 3-4 ¶ 4.1.1; *id.* at 6 ¶ 9.1. This argument is unavailing. "Simply, a private citizen cannot enforce criminal statutes in a civil action." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007). Whether to prosecute and what charges to file or present to a grand jury are decisions that generally rest in the prosecutor's discretion. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Thus, no private right of action exists under criminal statutes unless there is "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Ali v. Shabazz*, 8 F.3d 22 (table), 1993 WL 456323, at *1 (5th Cir. Oct. 28, 1993) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). Nothing in either Section 42.07 or Section 36.02 of the Texas Penal Code indicates that they are more than bare criminal statutes. Therefore, these statutes do not provide for a private right of action and whether charges may be filed under them is entirely within prosecutorial discretion.

II.    <u>Motion to Disqualify</u>

A.    **Legal Standards**

The Court must "take measures against unethical conduct occurring in

connection with any proceeding before it." *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citations omitted). And a motion to disqualify counsel is the proper method by which an issue of unethical conduct or a conflict of interest should be brought to the attention of the court. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) (citation omitted).

In the Fifth Circuit, disqualification cases are guided by both state and national ethical standards. *See id.* at 610. The canon of ethics developed by the American Bar Association provides one source for standards of professional conduct. *See In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). And the Court must also consider the Texas Disciplinary Rules of Professional Conduct, which govern attorneys practicing in Texas generally, and the Court's own rules. *See FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). But, because motions to disqualify are substantive motions affecting the rights of the parties, local rules alone do not justify depriving a party of its choice of counsel. *See Centerboard Sec., LLC v. Benefuel, Inc.*, No. 3:15-cv-2611-G, 2016 WL 3126238, at *1 (N.D. Tex. June 3, 2016) (citing *Dresser Indus.*, 972 F.2d at 543).

"A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing." *U.S. Fire Ins. Co.*, 50 F.3d at 1316. Disqualification motions have potential to be used as "procedural weapons" in litigation, intended "to advance purely tactical purposes," including delay or harassment. *Am. Airlines*, 972 F.2d at 611. And both the Model Rules and the Texas Rules recognize the possibility that a party may invoke a claim of disqualification

simply to harass an opponent. *See U.S. Fire Ins..*, 50 F.3d at 1316; *see also Galderma Labs., L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 395 (N.D. Tex. 2013) ("When the Model Rules are invoked as procedural weapons, the party subverts the purpose of the ethical rules." (citing MODEL RULES OF PROF'L CONDUCT, Scope, cmt. 20 (2010))).

In light of their potential for abuse, therefore, a court must closely scrutinize motions to disqualify. *See Am. Airlines*, 972 F.2d at 611; *Centerboard Sec.,* 2016 WL 3126238, at *1. And when an opponent raises the question of disqualification for purely strategic purposes and prevails, "public confidence in the integrity of the legal system is proportionately diminished." *U.S. Fire Ins.*, 50 F.3d at 1316. Disqualification of an attorney is thus, without question, a sanction the court must not impose cavalierly. *Id*. at 1315.

### B.    Analysis

Plaintiff's claim that Ms. Hoffman should be disqualified due to a conflict of interest arising from her role as a necessary fact witness is unfounded.

The Model Rules addressing attorney disqualification provide that a lawyer generally may "not act as advocate at a trial in which the lawyer is likely to be a necessary witness." MODEL RULES OF PROF'L CONDUCT R. 3.7 (2019). Correspondingly, Texas Rule 3.08 provides that a "lawyer shall not accept or continue employment as an advocate ... .if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client." TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 3.08 (2019). But the affected client may consent to representation despite a potential conflict of interest. *See U.S. Fire Ins. Co.*,

50 F.3d at 1313. And the client is only prohibited from waiving the conflict when the lawyer-witness must testify adversely to the client's interest. *See id.* at 1317.

Regardless, if "the attorney's participation as both lawyer and witness stands to prejudice only his own client, the opposing attorney should have no say in the matter." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001) (citing *U.S. Fire Ins. Co.*, 50 F.3d at 1315).

The defendants cite *K.R. ex rel. Doe v. Clarity Child Guidance Center*, 4 F. Supp. 3d 856 (W.D. Tex. 2014), for the proposition that an attorney's pre-litigation involvement in a lawsuit does not make the attorney a necessary witness so as to warrant disqualification. *See* Dkt. No. 45 at 5. There, the defendant, a mental health provider, moved to disqualify opposing counsel on grounds that her review of the provider's records, observations of the provider's facility, and communications with both parties during the pre-litigation phase made the attorney a necessary witness in the case. *See K.R.*, 4 F. Supp. 3d at 857. The court denied the provider's motion to disqualify, reasoning that the attorney's pre-litigation involvement constituted advocacy on behalf of her client, which did not make her a necessary witness in the lawsuit. *See id.* at 858. Even if the attorney was called as a witness, the court reasoned that most of her information would be privileged and any remaining testimony would be cumulative, given the availability of other witnesses to testify as to the essential facts. *See id.*

Here, as in *K.R.*, Plaintiff fails to carry his burden of demonstrating why disqualification is warranted. Plaintiff complains of an adverse effect on Ms. Hoffman's

professional judgment as a result of a pre-existing client relationship, but he does not provide any factual detail in support of this assertion. *See* Dkt. No. 27 at 2-3. Defendants concede in their response that Ms. Hoffman represented Academic Partnerships and communicated with Plaintiff during the pre-litigation phase. *See* Dkt. No. 45 at 5. But there has been no showing that this prior involvement makes Ms. Hoffman a necessary witness in this lawsuit. *Id.* And, on the record now before the Court, even if Ms. Hoffman was called to testify, it would seem that the information she could provide would be limited in scope – that is, any mental impressions, opinions, or conclusions that she formed during the pre-litigation phase and beyond would most likely be privileged or cumulative. *See K.R.*, 4 F. Supp. 3d at 858. As such, Plaintiff has failed to show that her testimony is necessary.

Plaintiff also fails to provide any support for his assertion that Ms. Hoffman's "current client did not give consent to the dual representation." *See* Dkt. No. 27 at 3. The very fact that Ms. Hoffman continues to represent the defendants in litigating the disqualification matter at issue contradicts that contention. While it is true that a client's right to waive a potential conflict of interest is restricted where a lawyer-witness must testify adversely to the client's interests, this rule has no application considering that Plaintiff has not shown that Ms. Hoffman is not a necessary. Based on *Horaist*, moreover, Plaintiff has no right to question whether Ms. Hoffman's continued representation prejudices her own client. Therefore, Plaintiff's claim that Ms. Hoffman should be disqualified in light of potential conflict of interest given her alleged lawyer-witness status is unfounded.

-23-

In addition to the proposed conflict of interest justification, Plaintiff argues that Ms. Hoffman should be disqualified because her involvement in the case will result in the appearance of impropriety. In considering disqualification on this basis, the court should consider "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *In re Dresser*, 972 F.2d at 544 (citing *Woods*, 537 F.2d at 812-13). But disqualification of an attorney is unjustified without at least a reasonable possibility that some specific incident of impropriety did in fact occur. *See Woods*, 537 F.2d at 813. The court is mindful that "the more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary." *Id*. Therefore, disqualification further requires a court to balance any likelihood of public suspicion against a party's right to counsel of choice. *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. June 1981), *overruled on other grounds by Gibbs v. Paulk*, 742 F.3d 181 (5th Cir. 1984).

Here, Defendants' right to counsel of choice outweighs the harm of any possible public suspicion resulting from Ms. Hoffman's involvement. In his motion to disqualify, Plaintiff merely sets forth vague assertions about Ms. Hoffman's "unethical" behavior throughout proceedings. *See* Dkt. No. 27 at 4. While he accuses Ms. Hoffman of disrespecting the court system, misrepresenting the truth in filings, and purposefully

attempting to complicate proceedings, *see id.*, these vague accusations, which are not supported by the record, fail to satisfy the level of specificity required in order to raise even a suggestion that disqualification on the basis of impropriety might be warranted. Because there is no reasonable possibility that some specific incident of impropriety actually occurred, denying Plaintiff's motion to disqualify will not give rise to public suspicion.

## Recommendation

The Court should grant the motion to dismiss Plaintiff Reginald Darrel Taylor's claims against the individual defendants [Dkt. No. 24], as well as *sua sponte* dismiss all claims against Defendant Academic Partnerships, LLC except Plaintiff's retaliation claim without prejudice to Plaintiff filing an amended complaint within a reasonable time to be set by the Court. The Court should also deny Plaintiff's motion to disqualify opposing counsel [Dkt. No. 27].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to

the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 5, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE