IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REGINALD DARRELL TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-1764-K |
| | § | |
| ACADEMIC PARTNERSHIPS LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION FOR RECONSIDERATION**

In this *pro se* matter that United States District Judge Ed Kinkeade referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference, the Court entered judgment dismissing Plaintiff Reginald Darrel Taylor's claims with prejudice on August 29, 2020, *see* Dkt. No. 141, and denied Taylor's September 16, 2020 motion for leave and to reinstate case [Dkt. No. 142], which the Court construed as made under Federal Rule of Civil Procedure 59(e), on September 30, 2020, *see* Dkt. No. 143.

Taylor then filed, on November 12, 2020, a Motion for Leave to Extend Time and Brief in Support, moving the Court to extend his time to file a notice of appeal by 90 days. *See* Dkt. No. 144.

And, because Taylor's latest motion was filed within 60 days of the Court's denial of his Rule 59(e) motion, the Court construed the motion as made under Federal Rule of Appellate Procedure 4(a)(5) and granted the motion to the extent it extended Taylor's deadline to file a notice of appeal to Monday, November 30, 2020.

*See* Dkt. No. 145. Defendant Academic Partnerships, LLC ("AP") now moves the Court to reconsider its order. *See* Dkt. No. 146.

## Legal Standards and Analysis

I.  Federal Rule of Civil Procedure 54(b) governs reconsideration of the order granting the construed motion for extension.

Because the Court did not anticipate that AP would oppose the construed Rule 4(a)(5) motion for extension, it entered the order on the motion prior to receiving a response from AP.

But the order is interlocutory. As such, reconsideration is governed by Federal Rule of Civil Procedure 54(b), which "authorizes the district court to 'revise[ ] at any time' 'any order or other decision ... that does not end the action.'" *Taylor v. Denka Performance Elastomer LLC*, Civ. A. No. 17-7668, 2018 WL 1010186, at *2 (E.D. La. Feb. 22, 2018) (quoting FED. R. CIV. P. 54(b); citing *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) ("Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1995) (en banc)))); *see also Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) ("'Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court[,]'" which should "determine 'whether reconsideration is necessary under the circumstances.'"

(citations omitted)).

Thus, the "flexible" nature of Rule 54(b) "reflect[s] the 'inherent power of the rendering district court to afford such relief from interlocutory [orders] as justice requires.'" *Austin*, 864 F.3d at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). And, here, Rule 54(b) allows the Court to treat AP's motion for reconsideration as a response to the construed Rule 4(a)(5) motion and now reconsider that motion *de novo* with the benefit of AP's arguments.

II.     The excusable neglect standard governs Taylor's request for an extension.

A "district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) ... that party shows excusable neglect or good cause." FED. R. APP. P. 4(a)(5)(A). As the structure of the rule implies, "[t]he good cause and excusable neglect standards have 'different domains.' They are not interchangeable, and one is not inclusive of the other." FED. R. APP. P. 4 advisory committee's note, 2002 Amendments, Subdivision (a)(5)(A)(ii) (quoting *Lorenzen v. Employees Ret. Plan*, 896 F.2d 228, 232 (7th Cir. 1990)).

"A more structured and exacting analysis is appropriate where a party seeks protection from his own negligence; where a litigant is the victim of unforeseeable circumstances, however, justice permits greater discretion." *Price v. General Cable Indus., Inc.*, 466 F. Supp. 2d 610, 613 (W.D. Penn. 2006). And the Rule's subsequent addition of a good-cause option "'expand[ed] to some extent the standard for the grant of an extension of time,' showing that excusable neglect should not be equated with

'good cause,' much less with the broader concept of 'cause.'" *In re Heartland Steel, Inc.*, No. 1:03-CV-802-DFH, 2003 WL 23100035, at *3 n.1 (S.D. Ind. Dec. 16, 2003) (citation omitted).

"The good cause standard" "is applicable 'in situations in which there is no fault – excusable or otherwise.' In those situations, an extension of time is necessary because of something that was entirely beyond the control of the moving party, such as where 'the Postal Service fails to deliver a notice of appeal.'" *Tuesno v. Jackson*, No. 5:08-cv-302(DCB)(JMR), 2013 WL 685928, at *4 (S.D. Miss. Feb. 25, 2013) (quoting FED. R. APP. P. 4 advisory committee's note, 2002 Amendments, Subdivision (a)(5)(A)(ii)).

> And a court's determination as to excusable neglect
>
> is at bottom an equitable one, taking account all of the relevant circumstances surrounding the party's omission. These include ... the danger of prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007) (quoting *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998) (quoting, in turn, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); internal quotation marks omitted); *see also Bennett v. GEO Grp., Inc.*, Nos. 12-60017, 12-60348, 2013 WL 5916765, at *3 (5th Cir. May 22, 2013) (per curiam) ("*Stotter* and *Pioneer* demonstrate that where attorneys" – whose fault is attributable to their clients – "fail to file in a timely fashion because of 'inadvertence, mistake, or carelessness,' the neglect may be excusable. Moreover, these cases reinforce the fact

an equitable standard is used to determine excusable neglect." (citations omitted)).

"Although courts must 'tak[e] account of all relevant circumstances surrounding the party's' error, the merits of the underlying appeal are not relevant to the question of whether 'the failure to comply with a filing deadline is attributable to negligence.'" *In Re Prism Graphics, Inc.*, 666 F. App'x 355, 357 (5th Cir. 2016) (per curiam) (quoting *Pioneer*, 507 U.S. at 394-95; citation omitted). And, regardless which standard applies, the rules now "require only a 'finding' of excusable neglect or good cause and not a 'showing' of them." *Krepps v. Gov't of the V.I.*, No. CRIM.A.1999/0047, 2009 WL 1117297, at *2 n.5 (D.V.I. Apr. 22, 2009) (quoting and citing FED. R. APP. P. 4 advisory committee's note, 1998 Amendments, Subdivision (b)).

III. Under these circumstances, the Court finds excusable neglect to grant Taylor an extension of time under Rule 4(a)(5).

Here, absent an extension of time, the prescribed time for Taylor to file a notice of appeal was October 30, 2020, thirty days after the Court denied his construed Rule 59(e) motion. *See* FED. R. APP. P. 4(a)(1); FED. R. APP. P. 4(a)(4)(A)(iv).

In his construed motion for extension, Taylor explains that his need for more time (and implicitly his failure to file a timely notice of appeal) is because his access to the law library at Southern Methodist University has been limited due to the ongoing COVID-19 global pandemic and because he sustained an injury to both his hands on August 22, 2020. *See* Dkt. No. 144 at 1-2.

AP counters that Taylor was able to file his Rule 59(e) motion on September 16, 2020, some 26 days after he allegedly sustained his hand injuries; that Taylor has managed to file some 20 legal briefs while using public law libraries throughout this

pandemic; and that the Court previously admonished Taylor that "restricted access to legal resources during the pandemic" together with Taylor's other reasons "'are not persuasive, let alone good cause, for granting any further extensions.'" Dkt. No. 146 at 7-9 (quoting Dkt. No. 137 (electronic order in which Judge Kinkeade then granted Taylor a two-week extension)). AP further argues that it would be prejudiced by allowing Taylor an extension and that Taylor's "repeated pattern of dilatory conduct of requiring multiple extensions and/or extremely lengthy extensions on his deadlines and/or failing to comply with the Court's Local Rules, the Court's Orders in this case, and the Federal Rules of Civil Procedure have severely prejudiced AP by prolonging a ruling in this case and causing AP to incur unnecessary legal fees and expenses by having to respond to Plaintiff's meritless filings and/or seek relief from the Court." *Id.* at 9-10 (footnotes omitted).

The Court is familiar with the prosecution of this matter and that Taylor's *pro se* status has presented challenges to bringing this case to an efficient conclusion. But, in managing this case, the Court has generally allowed Taylor at least one extension of time. And those past extensions of time should not now be held against him to deny him an extension of time to file a notice of appeal – an extension that is necessarily limited in duration by the Federal Rules of Appellate Procedure. *See* FED. R. APP. P. 4(a)(5)(C) ("No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.").

Further, applying the identified factors to these circumstances, AP may be

prejudiced by incurring legal expenses to respond should Taylor ultimately notice an appeal by the extended deadline, but that prejudice is outweighed by the prejudice Taylor would incur should the Court deny him an extension. The delay between Taylor's prescribed deadline to appeal and his filing a construed motion for extension is not lengthy. Nor is the extension to file a notice of appeal allowed by the previous order. The Court also accepts as reasonable the need for Taylor to access a public law library to research issues to raise on appeal, a step all litigants should take prior to filing a one-page notice of appeal. And all sides can acknowledge that the global pandemic – particularly the recent uptick in local COVID-19 infections – has limited public access to facilities such as law libraries.

At bottom, considering the applicable factors and the equities, the Court finds excusable neglect to justify an extension of time under Rule 4(a)(5). *Cf. Stotter*, 508 F.3d at 820 (noting that "more leeway" is given "to a district court's determination of excusable neglect when the district court grants the motion for an extension of time" (citation omitted)).

## Conclusion

For these reasons, the Court DENIES the motion for reconsideration [Dkt. No. 146] and affirms its decision to extend Taylor's deadline to file a notice of appeal.

SO ORDERED.

DATED: November 20, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE